then we will proceed with our calendar we have one motion set for argument today that is in the case of United States v. Andrews docket number 202675. Ms. Kelman would you please begin. Yes good morning your honor and may it please the court my name is Susan Kelman and I represent Mr. Andrews. It's a little bit a little sarcastic in a way because I've never met Mr. Andrews and that is what brings us before the court today. I was asked by Judge Engelmeyer to represent Mr. Andrews in April of 2020 following the declaration of a mistrial as a result of the onslaught or of the coronavirus and the interruption of the trial that he had been in the middle of. We had have made a number of bail applications all of which have been denied by the court and the reason that we seek further review by by your honors is that we we feel that Mr. Andrews is in a place where frankly after almost 40 years of doing this I've never been in this position which is representing somebody I've never met cannot have a conversation with other than on the telephone and have not been able to review the discovery. We add to that or or plan as a strategy. Let me interrupt for just a minute. Am I right in understanding that the motion the trial is now scheduled for October 20th but there's a motion for adjournment is that right? Yes your honor and that is the new piece of the puzzle. On September 17th the government filed a request for an adjournment until the first quarter of 2021 which would mean that Mr. Andrews will have been in pretrial detention since for nearly two years. He was arrested in February of 2019. So two years of pretrial detention and the government's position up until last up until the 17th was this is all the defendant's fault because this is all the defendant's fault because he asked for a stay originally which is of course nonsense. There was the COVID outbreak and then he asked to uh for a mistrial which was unopposed because the courthouse was closed. So the notion of putting that on the defendant could you could you could you explain um why it is that you've not been able to review the discovery? I wasn't clear about that. I've been able to review it your honor but I've not been able to discuss it with the with the defendant and not only have I not been able to discuss it with him but the defendant no longer has any discovery I'm told because there was a shake-up at the court at the jail and in the course of the search for for some kind of um illegal contraband. Counsel counsel in your speech you say a lot about why this case you keep saying this case is different from other cases of this sort but I must say I didn't really catch what it was that made this case different from those where the presumption of detention is so very strong. Now I know you don't deny there is a presumption but you say that the case is different. Now in what way is it different? Hello? Hello? We may have lost her. We may have lost her. Ms. Kelman? Let me um let me give her a call. Okay. The question was too hard, Guido. Yeah. You lost. We're all here but she's not. Yeah, yeah. Judge Calabresi, it's uh Ms. Kelman again. I'm not sure why but I was dropped from the call. Yes, what makes this case different from the bulk of of cases of sexual trafficking and such? Very fair question, your honor, and I think the answer is very straightforward as well. This is a situation where there was uh where the um the woman involved was free to leave at any time which is not in my own experience never the never the situation. This was an arm's-length transaction also never the situation. They negotiated a situation where she would work in exchange for crack. There was no violence here. There was no coercion and in fact her mother is just miles away um 10 minutes drive away and she's met with her mother on a regular basis so if she needed a way out um her mother was right there if she said gee I need help mom get me out she was out in in 99.9 percent of these cases these women don't have their own phone they don't have anywhere to go they don't have anyone to reach out to they are literally prisoners um in this sexual traffic trafficking business this is not only not the case here because of her ability to break free if she chose to but she also was running her own freelance business when she wasn't working on calls that came in through this one route she had and we have thousands of thousands of text messages that support the notion that she also um had many many other clients and was free to do as she pleased so I think that's a very very important difference and she was she had no fear of this fellow and she testified that she did not fear him she testified that he wasn't he her crack supplier he was one of her crack suppliers the evidence is that she had many many crack suppliers and she had suppliers of other drugs because she abused opioids and heroin and the evidence that you would agree you would agree that a person who who's an addict might be dependent upon a sore a source for drugs in a way that uh keeps them uh in effect traps them not no question about it your honor and of course the reality is she's not trapped in our view here because she has access to other narcotics from several other people and that's what the evidence supports so she's really not in the traditional sense trapped and oftentimes these people are trapped not just because of the drugs but because of fear of violence she had neither violence nor the inability to get drugs did she testify uh before the mistrial occurred yes she did your honor she was in all the way through cross-examination right so so judge engelmeyer had uh listened to her testimony for a series of days uh before before uh the the case was uh was was adjourned for as a mistrial and correct he's really why isn't he in the best position to assess this whole situation in terms of the likelihood of success uh of of a conviction and weigh that with all the other factors that are appropriate for bail i i i would have to suggest some level of course your honor he would be but here i am months later from april to september and i've yet to meet the client that was supposed to go to trial with in a month and that is an unmanageable situation we're not asking for this man i'm sorry he won't be going to trial he won't be going to trial right away uh it looks like now government's asked for more time uh and uh appropriately so i think in order to uh because of the covet situation uh in the hopes that it may be cleared up by them uh but in any event what is what is to prevent the district judge from deciding uh how to manage uh your uh ability to to uh contact and and work with your client as a matter of of trial management uh and it's a little different kind of situation than would be true normally but um he he's in a position to make rooms available in the courthouse and uh as part of the lead up to trial in which case you would have a he could give you an opportunity you know you would make the request to him uh and uh he he could he could respond accordingly your honor i would say first of all judge judge engelman i could not have been more accommodating and he's done everything he can try to assist us in fact just last week we at the end of the week we had a conference with the council to the mcc and she made it fairly clear that the mcc was just not an option although horrifically they are opening yesterday as of yesterday and allowing defense lawyers and other visitors in which is shocking to me given the answers that we got to the question um put to judge engelmayer but on top of that your honor judge engelmayer has gone out of his way to try to get us some space in the courthouse and what he was able to accomplish was uh someplace in the marshall cell in one of in the marshall's lockup which has a metal screen between myself and my client so we can't share discovery and he can't see something like the 3500 material um i can't i can't send it into him because of the nature of the material and i can't show it because we have a screen between us um yeah so that's not ideal either um what we're proposing judge is the most confining kind of restrictions my client is not opposed to home detention he'd wear a bracelet with gps he has substantial co-signers six financially secure co-signers he also has seven children at home and a wife with a brain aneurysm who is desperate to have him home because she needs the help this is horrific you've reserved a minute of of rebuttal and um i think that you know we have reviewed the papers and which that information that you were just outlining about uh the bail conditions you proposed so on that laid out why don't we hear from the government and then you'll have a chance to respond all right thank you your honor thank you very much yes uh good morning may it please the court my name is rashmi bascaron and i represent the united states in this appeal and in the court below the court should affirm judge engelmeyer's detention because he did not clearly err in concluding that no condition or combination of conditions could reasonably assure carl andrews's appearance in court or address the danger he presents in addition and other reasons judge engelmeyer made no mistake in denying andrews temporary release under section 3142 under the court's deferential clear error standard this court reverses a detention decision only if it has a definite and firm conviction that a mistake has been made in this sex trafficking case which carries a rebuttable presumption for detention judge engelmeyer made no mistake this is especially true because judge engelmeyer had before him a record not typically seen in pre-trial detention determinations he presided over four days of the trial testimony which included the testimony and cross exam cross examination of key government witnesses let me let me ask one question please this judge carney um obviously judge engelmeyer is familiar with all of this but i was struck by uh the defense point that the government had dropped um a significant portion of its case uh kind of like seemed like maybe right before trial or uh here in the middle of the the trial where a uh cooperating witness was you know they said deemed untrustworthy and so we got down to a prosecution that was focused on this one individual who as miss kelman says seemed to present somewhat yes and thank you for the question uh the government dropped three counts um several days or a couple of days before the start of trial related to sex trafficking allegations involving a different victim um the government dropped those counts because um they in part relied on the testimony of a cooperating witness who um uh for reasons that were discussed with the district court we did not believe um we believe there were issues relating to that witness's credibility not with respect to the substantive allegations against the defendant but uh based on his own uh criminal history and and ongoing crimes um that said the government counsel did uh judge engelmeyer find that there was danger uh that this person would not come to me you know i don't see much evidence that of danger uh this isn't somebody who's liking to take off and go to another country or something like that uh thank you for that question judge engelmeyer found both um a risk of flight and he also found that the defendant the defendant um presented a a risk to the community and with respect to flight uh judge engelmeyer relied on several factors one of them was the fact that the defendant faces a 16-year mandatory minimum sentence and as judge engelmeyer observed um the defendant's appreciation of his risk of conviction if anything has grown hasn't seen the strength of the government's case at trial and so therefore the judge engelmeyer found that he had strong incentive to flee um judge engelmeyer also observed and this was during the initial uh bail hearing um but it still holds true today that the defendant's lengthy criminal history uh waved in favor of detention um including because his criminal history includes convictions that spoke to uh the integrity of the justice system i think another factor that that kind of bears on the defendant's adherence to the rule of law that's worth mentioning is that you know to the extent there's any suggestion that the defendant has a newfound appreciation for the rule of law that's simply belied by the fact that he submitted a materially false declaration in connection with a suppression hearing in this matter that was conducted in um december um 2019 um did you could you address uh uh have you finished that point that you made uh to judge calabresi i have a question about about the scheduling and rescheduling of the trial i gather the reach the the government has now asked for more time uh another three months i guess or so uh beyond the date that was originally scheduled so to be in the first quarter of next year um is that basically because of the coronavirus situation or are there other reasons for that yes thank you for the question um the purpose of the government's adjournment request was because um within the last week or so the government learned that one of its key and in light of that mental condition and the fact that that witness would be starting chemotherapy um the government believes that that witness would not be in a position to testify or prepare for a trial um this year um so the government so the so the purpose um underlying the government's request for the adjournment was for that reason um in its letter um the government in addressing you know the the soundness of the of the adjournment the government noted that this adjournment request would be protective of other of the defendant's interests including the fact that you know everyone is working very hard during the pandemic to restore access um in-person access to his lawyers and this additional delay which is you know not a not not a very extremely long delay we are imagining that is a delay of just a couple of months we give more time um for um meaningful in-person access um to counsel to resume for um and and i would note on that regard um and and uh this is a an issue that was raised um in uh with miss uh kelman um this is a trial management issue that the district court is is very much actively um working on um council this may be an odd question but how key is that witness that is you know you're describing something that um uh sounds like a very very bad operation uh god forbid but if that witness is not available does the government still have a case and if not aren't we sending somebody to jail uh now uh in a case that may not be there uh no your honor the government's position is that it still has evidence beyond a reasonable doubt to convict the defendant even if this witness who although the government believes is an important witness um the government's case does not rise or fall on that witness is not going to but enough of it but enough of it you want to delay yes your honor um this is all new information that we received this week um we the government's that an adjournment of just a couple of months would give the government an opportunity to see whether this witness would be in a position to testify at trial that said the government is prepared to proceed to trial um without this witness thank you does that answer your question judge calabresi yes okay very good um thank you for your argument uh miss kelman you have a minute rebuttal time um very briefly your honors i'd like to just say that the uh question of of uh this witness has been also dealt with by judge uh engelmeyer and judge and the government has has represented to the judge that this is witnesses nearly a 404 b witness and not a witness that they require um in order to prove their case the quote-unquote victim in this case is essentially the the woman who did testify and who was um cross-examined so this this other witness is as i said just 404 b i don't want to waste time but the government's also their suggestion that the mcc or the jail might be an appropriate place certainly that's not the case now and judge engelmeyer made quite a record last week with the council to the mcc who confirmed that they have not used they have not consulted with experts that they have done no testing of the air circulation systems um that the staff and the officers at the mcc are not tested for covid um and in fact the defendant if he today i my understanding is the judge went out of his way to make arrangements for our clients to be brought over to the courthouse for the pens to the marshal and in fact he's been told at the jail that if he leaves he's going to have to go into quarantine for 14 days this is not a way to prepare a case especially with someone i've not met and where we have the ability to make a bail package that will protect the the protect the community if he doesn't leave his house other than to see his lawyer we would consent to a bracelet with gps um and the seven children and a wife who has a brain aneurysm and needs his help at home is just ludicrous and on the danger i think i've addressed the danger and i'm probably out of time am i right in understanding that you have made every aspect of the conditions that you propose um known to judge engelmeyer there's nothing that you're telling us okay thank you um run the last sentence to wrap up or are you done uh you know my last sentence wrap up your honor thank you would just be simply that this is a sixth amendment problem that in my view can't be can't be resolved unless i have a meaningful opportunity to meet with my client and prepare a case prepare a defense review the evidence with them i'm in the vacuum here all right i think we understand the arguments thank you very much um we will reserve decision and try to get you an answer promptly thank you so much thank you